Clerk's Office
U. S. District Court
**FILED**
2/25/2020
Julia C. Dudley, Clerk
By: /s/ Susan Moody
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| FRANKL MILLER WEBB &, MOYERS, LLP, <br> Plaintiff, <br><br> v. <br><br> CREST ULTRASONICS CORP., <br><br> Defendant. | Civil Action No. 7:19cv143–HEH |

## MEMORANDUM OPINION
(Following Non-Jury Trial)

This breach of contract action evolves from litigation originating in the United States District Court for the Western District of Virginia. Because of a judicial conflict arising in this post-litigation fee dispute, this Court was appointed by the United States Court of Appeals for the Fourth Circuit to preside over this aspect of the case.

The underlying action in the United States District Court for the Western District of Virginia arose from Sandra Alcorn's exposure to the chemical solvent 1-bromopropane during the course of her employment. The defendant in the immediate action, Crest Ultrasonics Corporation ("Crest"), supplied this chemical solvent to Alcorn's employer. Alcorn came into contact with the solvent because it was used in the operation of forward degreasing machines, which she utilized in the course of her employment. After the manifestation of several serious physical maladies, Alcorn filed suit against the solvent and machine manufacturers for negligence and breach of warranties. Ultimately, following discovery, the U.S. District Court for the Western

District of Virginia granted summary judgment for the defendants. The plaintiff in this case, Frankl Miller Webb & Moyers, LLP ("Frankl Miller") represented Crest in the underlying litigation.

Distilled to its essence, the immediate litigation involves the costs advanced for experts and the attorneys' fees charged by Frankl Miller for continuing discovery after filing what appeared to be a potentially meritorious motion for summary judgment. Crest contends that, despite a firm trial date, Frankl Miller should have suspended discovery pending the court's ruling on the summary judgment motion.

Following a non-jury trial on December 17, 2019, this Court directed both sides in this dispute to file post-trial memoranda detailing their respective positions, in lieu of final arguments. Both parties have done so.[1]

The plaintiff, Frankl Miller, called three witnesses. Jason Moyers, a partner in that firm, who served as trial counsel for Crest, provided the background history of the Alcorn litigation. Moyers recognized that, given the underlying nature of the claim, poisoning by solvent, it was difficult to identify a specific date of onset. He testified that the trial judge, Elizabeth Dillon, recognized that the specific date of injury, which governed application of the statute of limitations, was not specified in the Complaint. Moyers testified that engaging experts and acquiring medical records would be critical in determining the onset of Alcorn's injuries.

---

[1] Both parties have also detailed their respective positions on Plaintiff's Motion for Sanctions, filed on August 26, 2019 (ECF No. 27). The Court will not address the issue of sanctions in this Memorandum Opinion and will make its findings on that issue separately.

Therefore, with an initial trial date of April 2018, Moyers sought authority from Crest to retain the necessary experts to support an earlier date of onset of Alcorn's injuries. In order to adequately support a motion for summary judgment, he needed to await Alcorn's damages expert's disclosures and to take her deposition following receipt of the expert's opinion. Knowing that the court would only allow a single motion for summary judgment, Moyers was of the opinion that he needed to present the strongest argument possible that Alcorn's claims were precluded by the statute of limitations. Given the posture of discovery, a U.S. Magistrate Judge continued the trial date to November 2018. Moyers kept Crest's CEO, Mike Goodson, advised of both the deadlines set by the court's scheduling order and the tasks necessary to present a persuasive argument for summary judgment. According to Moyers, he kept Goodson advised of the continuing discovery requirements and the need to defray the costs of expert witnesses. He received no opposition from Goodson or any other representative of Crest Ultrasonics Corporation.

Moyers testified that in June of 2018 he contacted Goodson to inquire when payment would be received for overdue attorney and expert witness fees. Shortly after Moyers filed the summary judgment motion with supporting briefs and exhibits on behalf of Crest, in July 2018, Moyers testified that Goodson advised him that he did not intend to pay any of the outstanding bills because he believed they were excessive. He later advised Moyers that Crest intended to engage a consulting attorney to review Frankl Miller's work product and trial strategy. Moyers testified that the consulting attorney found no flaws in the law firm's work product or discovery strategy.

Therefore, up until the time that Crest Ultrasonics Corporation's motion for summary judgment was granted by the trial court in September, Frankl Miller, believing they had an obligation to represent their client, continued to pursue the discovery necessary to defend Crest in the event the motion for summary judgment was denied. Crest CEO Goodson was aware of Frankl Miller's continuing preparation for trial, and offered no objection.

In November of 2018, Goodson, who believed no further preparation was necessary at that stage, advised Frankl Miller that it did not intend to make any further payments to the law firm for either its fees for legal services or expert witnesses. Moyers emphasized in his testimony that he, and his law firm, believed that all services performed and expert witnesses engaged were necessary to properly defend Crest Ultrasonics Corporation. Despite Goodson's belief to the contrary, Moyers was of the opinion that the motion for summary judgment could not have been pursued earlier. He added that Goodson never advised Moyers to discontinue working on the case or discharge his firm as counsel.

To provide an independent assessment of Jason Moyers' trial strategy and assessment of discovery needs, Frankl Miller called John Pyle, the attorney who represented Sandra Alcorn, the plaintiff in the underlying litigation. Pyle agreed with the necessity for delaying the filing of the summary judgment motion until Alcorn's experts had been fully deposed. A third attorney, William Watkins, who represented a co-defendant in the Alcorn litigation, also testified that Moyers's strategy was sound. In his opinion, it would have been a fatal mistake to file a motion for summary judgment

4

without thoroughly deposing Plaintiff's experts. He also agreed that it would be unlikely that Judge Dillon would have allowed Crest to file an unprecedented second motion for summary judgment. Watkins concurred with Pyle that the work performed by Frankl Miller was necessary to adequately defend their client in this case.

Although Crest remained steadfast that the work performed and fees incurred by Frankl Miller were excessive, they presented no countervailing evidence. Goodson resolutely maintains that the motion for summary judgment should have been filed earlier, before plaintiff's deposition was taken and experts were engaged. No expert testimony however was presented to support this position.

In its Memorandum Opinion of November 22, 2018, this Court concluded that Plaintiff was entitled to summary judgment as a matter of law on the issue of contractual liability for fees and services reasonably incurred in defending Crest in the case of *Alcorn v. Crest Ultrasonics Corp.*, No. 7:17-cv-227–EKD. The retainer agreement specified the terms and conditions of the law firm's engagement. It not only indicated the fixed rate for professional services but also noted that the services of experts would be necessary for effective representation. (*See* Compl. Ex. A, at 2.) Plaintiff's evidence that Frankl Miller was authorized to retain experts and that the Defendant was periodically briefed on their necessity, appears to be undisputed. The Defendant has introduced no evidence to support its contention that expenses incurred for experts during the pendency of the summary judgment motion were unnecessary. As Plaintiff's expert witnesses, John Pyle and William Watkins testified, the engagement of experts and deposition of Plaintiff were critical to ensuring an award for summary judgment. Again, Crest introduced no

countervailing evidence. This Court therefore finds that these expenses were reasonably incurred in providing effective representation to Crest. Moreover, this Court further finds Moyers's belief that a further postponement of the trial by Judge Dillon to be improbable was plausible, particularly since a prior continuance had been granted by a Magistrate Judge to enable further discovery.

Absent any particularized objection, this Court will award judgment to Frankl Miller in the amount of $165,404.46 for services rendered and costs advanced. Furthermore, pursuant to the contract engaging Frankl Miller's services, they are entitled to 6% per annum on the unpaid balance from November 19, 2018.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: **Feb. 25, 2020**
Richmond, Virginia